Good morning. Good morning, Your Honors. May it please the Court, Shai Dvoretsky representing CBS Corporation's successor and interest to Westinghouse. If I could, I'd like to reserve three minutes of my time for rebuttal. The District Court erred both in its understanding of the colorability requirement for federal officer removal and in its understanding of the military equipment element of the government contractor defense. First with respect to colorability, the Supreme Court and this Court have emphasized that a removing officer needs to show only a colorable defense, not a meritorious one, in order to sustain removal. Colorable means not frivolous, insubstantial, or immaterial. That's how this Court and the Supreme Court have described the standard in the context of federal question jurisdiction. The Supreme Court's Arbaugh decision is a leading case there. This Court has described colorability the same way in the context of administrative exhaustion in McBride. And the Fifth Circuit has held that the same understanding of colorability in these other contexts also applies to federal officer removal. This standard makes sense both practically and theoretically. As a practical matter, the federal officer removal statute is intended to ensure that plausible federal immunity defenses are resolved in federal court if an individual or entity acting on behalf of the federal government so wishes. Theoretically, this makes sense because when the Supreme Court added the colorability requirement or read that gloss into the statute in the Mesa case, it did so in order to avoid a constitutional problem that would otherwise exist under Article III. The colorability requirement serves the same function as Article III arising under jurisdiction. In order to invoke arising under jurisdiction, a party doesn't need to prove the merits of its claim. It just needs to show that it has a colorable claim. So to develop the law about the scope of this defense, is it never possible to do that in this posture? Like, you have to wait until the actual judgment to decide whether something falls within this defense rather than at this stage where we're only asking whether it's colorable? I suppose it's theoretically possible that you could have a case where on a colorability standard something would fall below that line and in that sense you'd be developing government contractor law. But it would be an unusual situation and certainly it's not this case. In this case, Mr. Yochum and Ms. Yochum have plenty of opportunity before the district court to make all of their arguments about why the government contractor defense doesn't apply. And I suppose there would be a case where there had not been certain allegations about government control and specifications so that it wouldn't meet colorability on the face, right? So you would be looking at the elements of the government contractor defense? Sure. The defendant, of course, still has some burden, right? You need to allege, and in the context of a factual attack, you need to provide some evidence of the elements of the government contractor defense. And if the defendant completely fails even to allege that, then yes. Now, whether to Judge Friedland's question that would count as developing the law in government contractor immunity, perhaps not. I mean, about what's the scope of the item being sold or whatever, this question that you're debating here, it feels like we're not in a posture to answer that question. If we agree with you that it's at least unresolved, I mean, you may have an argument that it's in your favor, but if it's at least unresolved, we really have to just leave it that way at this posture? Is that how you would? I think that's right at this posture because the point of federal officer removal is that a federal court will resolve that. Now, of course, the district court hasn't resolved that on the merits in the first instance, and so this court wouldn't be in a position to do so in this appeal. But I suppose one fundamental flaw in the district court's analysis is that even though it purported not to be resolving the merits in the first instance, that's really what it was doing. Well, it says that this insulation isn't military equipment. So it did resolve it, right? We think, of course, that the relevant question is not whether the insulation is military equipment, but whether the propulsion system as a whole that Westinghouse supplied and was under contract to operate and maintain is military equipment. But whether that's ultimately correct or not, at a minimum, there's a line-drawing question here. And that line-drawing question is subject to the sort of colorability analysis that we're talking about. And so federal courts consider and have jurisdiction to consider all sorts of claims all the time that are at a minimum far weaker than the government contractor defense that we're asserting here. And so at a minimum, what we've asserted is sufficient to support removal jurisdiction. With respect to the government contractor defense itself and the military equipment element in particular, the proper way to look at this is that Westinghouse's nuclear propulsion system viewed as a whole is military equipment. The relevant test, and again, it's at least colorably so, is whether something is military equipment is determined based on the character of the overall product supplied by the defendant. That's consistent with this court's analysis in Butler. That was the case involving a defective ladder. And the court looked at the ladder as a whole. It didn't look at the particular component of the ladder. I think it was an aluminum loop that was alleged to be too weak and therefore defective. It's consistent with the Fifth Circuit's instructive decision in Miller, where the Fifth Circuit explained that, look, any product can be broken down into its component parts. You can always, instead of looking at the bullet, look at the lead in the bullet and say that's what was dangerous. Instead of looking at the engine, look at a particular component of the engine that may be commercially available in the same form and say that's what really caused the injury. That's not the right way to look at the government contractor defense. If you do look at it that way, that effectively eliminates the government contractor defense because a plaintiff can always atomize the product down to that level and plead that it was the one specific component that caused the injury. So, I mean, you're looking at the system as a whole, this entire propulsion system, correct? Yes. Is that your framework? Yes, Your Honor. And we're in that sort of colorable allegations and what evidence you've presented on the Westinghouse manufacturer of that whole system. So what is, where in the record do we see that? Um, so the evidence in the record as, let me make sure I understand the question. Evidence in the record that Westinghouse supplied the overall system? Yes. So to begin, it's in our answer, which is an excerpt of record 61. And then there are numerous deposition transcripts that talk about Westinghouse's role in this facility. They are... Oh, there's passing reference, sort of like spotty references here and there, but there's not like some kind of contract provided in the record? The contract's not in the record. I think that's probably because the contract is classified. And so I don't know... Okay, well that was my question, is whether it, or parts of it were classified. Because it'd seem unusual, given that you're arguing the system as a whole, which is why we got into the atomization in the district court opinion, it seems to me. Right. So I was just trying to understand what the practical impact of that was. Yeah, so I think that the practical answer is that the contract is probably classified, which is why we don't have that. But again, for purposes of colorability, we've certainly put forth enough evidence from which to understand Westinghouse's overall role here. And in fact, I don't think Westinghouse's overall role was even disputed here. I think where there is a dispute is over the legal question of, do we look at the system as a whole, or do we look just at the component of the system that caused the injury? And assuming Westinghouse provided the whole system, was there asbestos in the original provision of that system, as well as, it seems like we're talking about kind of replacement asbestos as it was maintained? So I think, first of all, it's not entirely clear whether what we're talking about here is an injury resulting from original asbestos or from replacement asbestos. I don't think that's spelled out in the way that, in the complaint or the way that the case has been litigated. But regardless, I think throughout, from the design through the maintenance of the equipment, the Navy required the use of asbestos. And that takes us to the reasonably precise specification requirements. And particularly in our reply at 19 through 23, I won't belabor the various quotes, but there are numerous quotes in there from installation instructions, qualified products list, and insulation plans, all of which mandate the use of asbestos. And to Judge Friedland's question, that was from the outset of the design through the maintenance of the equipment. Do we have to reach their evidentiary objections? You don't need to reach their evidentiary objections, because the district court, of course, assumed, regardless of the admissibility of this testimony, that remand was proper or remand was necessary based on the legal question of what the relevant product is. And that's incorrect as a matter of law, but at a minimum, we have a colorable argument that it is. But so if we agree with you about that, they still have these alternative grounds for affirmance, some of which I think may relate to the evidence that they have the objections about? So they, yes, they do have an alternative ground for affirmance based on the elements of the government contractor defense that the district court initially and ultimately found in our favor on. And with respect to the evidentiary objections there, again, we outline all of this in our reply brief, but the installation plans, they themselves introduced, so they can't have a credible evidentiary objection to that. With respect to the installation instructions and the qualified products list, those were properly authenticated as naval records under 901B8. It's okay that they're duplicates under Rule 1003, and they're subject to a hearsay exception for ancient documents as well. So there is an incredible evidentiary objection, but at a minimum, as to the installation plans which they introduced, there can't be an evidentiary question. So I noticed in your reply brief, you argued about why their evidentiary objections failed, but didn't argue that hearsay is admissible at summary judgment. So I mean, were you trying not to argue that we don't have to even, that these evidentiary objections don't matter at summary judgment? Well, I think it's whether or not hearsay is admissible, this is just an exception to hearsay. Right. So I was just wondering whether it even, whether a hearsay objection is even proper at this stage anyway, aside from whether it's a good hearsay objection. I see. At the colorability stage, I don't think it would be. If the Court has no further questions, I'll reserve four minutes for rebuttals. Thank you. Thanks. Yes. May it please the Court, Denise Clancy for the Plaintiff's Appellees. The District Court was correct in holding that the object of inquiry here was the injury-producing defect, which was the asbestos insulation. In order for this Court to find in favor of appellants, the Court would have to overturn two different precedents. The Snell case from the Ninth Circuit, Snell v. Bell Helicopter, which instructs us on where we look in order to find what is the injury-producing object at issue. And also, In Re, Hawaii, which explicitly states that where a commercial product such as asbestos insulation is made the basis of the plaintiff's complaint, that is not military equipment and the military contractor defense does not lie. Notably, Westinghouse— In Hawaii, though, didn't the defendant only provide the asbestos, and here they've provided this entire propulsion system? Well, in Re, Hawaii, yes, correct. The allegation was that they provided asbestos for use on a cruiser, an aircraft cruiser. But our allegation here, too, is, just like in Snell v. Bell Helicopter, that they provided a defective product. And in Snell, the defendant said, well, it's not just the driveshaft that you should be concerned about. It's the helicopter that we provided that contained the driveshaft. But let's go back to Snell, because there wasn't a question of military equipment there. It was the nexus, wasn't it, between the injury and what the government had done in terms of providing the specs. So that seems like a different question here. There wasn't really a question of whether military equipment was at issue, which is our threshold question here. But the question of what is the equipment at issue derives from the question of nexus. In other words, the entire military contractor defense, as articulated by Boyle, states that the first step is that you have to look for what is the nexus as between the charged conduct and the asserted official authority. And so you have to step back and say, what is the charged conduct? That's how Mesa analyzes where's the defense arising from. That's how Boyle analyzes where's the defense arising from. And here, the charged conduct is, just as in Snell, that they supplied an injury, a defective product, and the defective product is asbestos insulation. Just like in Ray, Hawaii, was it ultimately going to be put in an aircraft carrier? Yes. In Snell, was it ultimately going to be put in a helicopter? But you start and end the inquiry with what is the product at issue by looking at the nexus. Because you can't even have a government contractor defense unless you are raising that the charged conduct, what the plaintiff pled, implicates something that was the asserted federal authority that you, as a defendant, were allowed to do. It's like a sort of a horse and cart issue here in terms of the nexus, because if you go back and carefully read Snell, what they're saying is you have this drive shaft and these various features. I think what the court was saying is that we don't have, in this case, the government's design directive, which, of course, would be required to know to which specs or design you're manufacturing it. It seems to not really apply the same here because we have . . . if you use the colorable as opposed to like are we now in the summary judgment or trial stage, you're kind of in a different detail of the evidence. But in terms of just having the colorable allegation, it's hard for me to understand why CBS can't get by that and just the colorable allegation. So I think you ought to focus on that. Sure. Well, I have two points on the colorable. One is that I don't think Fifth Circuit laws they are stating is, one, been adopted by the Ninth Circuit, nor do I think it's appropriate as the government . . . We're happy to stick with the Ninth Circuit, of course. And the Ninth Circuit hasn't adopted the Fifth Circuit's interpretation of more negligible, more just more than negligible. And I think that it is inappropriate under the government contract of defense because, remember, under Boyle, they could have adopted the Ferris Stencil Doctrine, which said that you basically have immunity if you're going to sue someone acting under color of federal authority. But instead, they said, no, that's too broad. We're going to go to the FTCA and we're going to say that there must be some discretionary authority exercised. And that, and to analogize and say, well, this is exactly the same as a 1332 arising under complaint, I think ignores the underpinnings of Boyle, which is cautioning that we are being careful about Article III jurisdiction and that we are specifically requiring some exercise of authority with respect to discretionary authority with respect to the product at issue. I think it's a step too far. The second issue with respect to colorability is I think that the threshold question as to whether or not you're dealing with military equipment, which piece of the equipment you're dealing with, is not a question of fact. It is a question of law. As a matter of law, the courts require there to be a nexus as between the conduct charged and the, where the contractor was acting under color of federal authority. And so when you say, that is a way of saying that in replete cases. So why can't Westinghouse come back as they have and say, well, you're only talking about asbestos, but asbestos was one component of this entire system that we were asked to build and provided and maintained. So our defense is based on the specs for the whole system. Just for the same reason that the court, this, the Ninth Circuit in Snell said you, when that was the, literally the exact same defense by the defendant there, like, look, we provided you with the whole helicopter, which had this drive shaft in it. And this was an entire comprehensive unit that we were given directive to provide by the Navy. And they said, no, the product at issue here is not the whole helicopter. Snell was crystal clear that you have to look at the, the drive shaft in question, as were numerous other cases. In Butler v. Ingalls, which defendants cite for their purposes, the court was clear it wasn't the entire aircraft carrier provided, it was the accommodation ladder. And Snell goes and lists, it's Snell at 747 through 748, numerous cases where they're talking about, they want to make their point expressly, that you look at what is the defective product at issue. And they list numerous cases from circuits across the country where you look at, for example, the helicopter, not the entire helicopter itself. You look at the fuel and exhaust system in an MK-48 support vehicle. You look at engine piles in an aircraft. You look at ball bearings in the helicopter. That's where you, as a matter of law, if the plaintiff, and that's why the district court took great care to say, this is what the plaintiff has alleged, that this is asbestos insulation. And therefore, this is where I'm going to focus on for purposes of determining as a I should be examining for purposes of military equipment. Westinghouse concedes that the asbestos insulation is not military equipment. Westinghouse concedes in its reply brief that, quote, freestanding asbestos insulation is not military equipment. But what Westinghouse has done, nowhere is there such a term as freestanding. The military doesn't take products and just use them freestanding. In every case which I've just cited to you, the ball bearing, the landing gear, the pylons, those were pieces of equipment which were incorporated into larger pieces of equipment, often supplied by the same defendant. Yet the focus of the inquiry, as a matter of law, has always been what has been the injury-producing product that is alleged. And in Ray, Hawaii, and the multiple cases, lower court cases applying in Ray, Hawaii, have stated that when you have a commercial product, and the definition for this court of commercial product is set forth expressly by the district court. It is a product at issue is, excuse me, was it developed on the basis of involved judgments made by the military, or was it an ordinary consumer product produced by the armed forces? That is the definition. You have to do that disjunctive analysis. And there is no argument even made that asbestos insulation is military equipment, therefore the inquiry must stop there. Moving on, I think one thing that's important also in moving on to their elements, if you look at if they've even satisfied military specifications, I think this is very important because it's sort of obfuscated in the, it's very much obfuscated in the reply brief. Their expert, Admiral Horn, says you start and stop with the military specifications for the unit at issue. It's the military specification that determine what is required. That's their expert, Admiral Horn. The military specifications, which we set forth and even put a picture of in our answer because it is so important for this court's analysis, and they're at the supplemental excerpts of record 42 through 52. Those are the mil specs which specify exactly what must be in the AW1 reactor. Nowhere do those mention ever asbestos. What Captain Lowell, plaintiff's expert, explained, and there is no rebuttal or dispute of this, is that it is Westinghouse and Westinghouse working in conjunction with the building facility, with Newport News, with the shipyard, who then determined that asbestos would meet the performance requirements of the military specification. Indeed, Westinghouse, we put in excerpts from Westinghouse's own expert, McCaffrey, stating that these are performance specifications only. And as a matter of law, under the Trevino case, where you just have a stamp of approval, as we have here by the government, where there's not been an interactive back and forth, where there are performance specifications only, that doesn't rise to the level as Boyle requires as the entire progeny of the military contractor defense requires, that there must be discretionary authority actually exercised by the government. And so even... But the district court disagreed with you about this point, right? Well, no, because what they're citing to there is the district court's superseded order. So I don't know and wonder what circumstance one can say that a superseded order, and I think you're referring to the record at ER 16, but I don't think that one can say the order of this case, because the court in its... The order that superseded it, started at ER 1-7, only reached the issue of asbestos insulation. That being said, this is a de novo review, and if one were to assume that the superseded order is to be followed, what the superseded order says is, well, the mil specs, the specifications require the use of asbestos. That's factually wrong. That is factually wrong. The mil specs never mentioned the use of asbestos, period. And so there's not even a colorable argument that the specifications for the AW1 reactor, as entered in this record, required the use of asbestos. Everything that they point to in their reply brief are the Newport News shipbuilding plans, and which our expert, Captain Lowell, discussed in the context of saying, look, here's what approval, and that's all you will see is a stamp of government approval, which is a matter of law. Again, we have to have some discretionary authority do it. As In Re Hawaii quoting New York asbestos litigation cases said, at some level you have to say, the government made me do it. Here there just is not evidence in the record of this, no matter how one views the issue of colorability, because they cannot get around the fact that the mil specs never used the asbestos. McCaffrey says these are performance specifications only. So that is absolutely critical. But doesn't he say that you have to use asbestos to meet the performance requirements? No, there's no evidence in this record whatsoever that the only substance that would meet the performance requirements was asbestos. That is not in this record. What is in this record, and perhaps you're thinking of, is there is a qualified product list. So in other words, once Westinghouse determines that asbestos would be used to meet the performance specification, they say we're going to use asbestos, government, and the government says fabulous. Here's our qualified product list if you're going to use asbestos. And they chose, for example, one of the products they could pick was unibestus from the qualified product list. But the case law doesn't support that choosing from a menu of options after you've decided that it will be asbestos satisfies the exercise of discretionary authority on the part of the government. This is apples. So, I mean, you may ultimately win this argument, but doesn't it seem that there are arguments on both sides about whether asbestos was needed here and this is what makes it colorable and it needs to be litigated further? It seems like a fact dispute. There is no fact dispute here because of this reason. They have no, their own expert, Admiral Horn, concedes that it's the mil specs one looks to for purposes of each unit at issue. And while Admiral Horn says generally that sure, the military chose asbestos, he says but for each unit, you start and end with the mil specs. The mil specs here, it is, they never mentioned the mil specs in their reply brief and they have had no answer for the mil specs, which is they don't use the word asbestos. They're performance requirements only. And when there is no evidence on the other side, no matter how you view colorability, that doesn't raise even a colorable government defense. And I think that Boyle requires us to give a little bit more respect for the expression of government discretion than just saying that, well, we're going to rubber stamp what Westinghouse and Newport News chose. And so this record, there may be other records, but not in this record would you suffice to meet the government contractor defense. It's just not, it's not there. And again, there is no evidence in this record that asbestos was the only thing that could be used for this AW1 reactor facility. Unless the court has further questions. Thank you. Thank you. If I could, I'd like to briefly come back to colorability, Snell and reasonably precise specifications. With respect to colorability, this is not an appropriate case in which to create a circuit split with the fifth circuit. Ms. Clancy said that the colorability standard would not be consistent with the purposes and the standards of Boyle. The relevant question though, is whether it's consistent with the federal officer removal statute. And it is because the Supreme Court has explained that the federal officer removal statute ought to be construed broadly so that if there is a colorable question, that's one that ought to ultimately be resolved by a federal court rather than a state court. That's the relevant policy to look to is the policy underlying the removal statute. With respect to Snell, it's true that in Snell, the court looked at whether the government approved reasonably precise specifications as to the particular defect in question having to do with the drive shaft and component parts. That's a different question than whether we're dealing with military equipment at all. You could theoretically imagine a situation where you had military equipment, say a helicopter, but there was some aspect of the helicopter that the government just didn't care about. Never expressed any preference as to, I don't know, the fabric of the seats and the fabric ends up being poisonous and somebody gets injured. Maybe there's no government contractor defense there, and you would focus on the fabric for purposes of assessing the specifications. But you'd focus on the helicopter as a whole for purposes of this court's military equipment requirement. Lastly, with respect to reasonably precise specifications, again, there are three sets of documents that we cite and quote at length in our reply brief at 19 to 22. Those are documents that were created and produced following on from the mil specs. The mil specs set general requirements. These three documents having to do with the plans, the instructions, and the qualified products list implement those. Those documents expressly use mandatory language. The government at a minimum approved them, and at least in the case of the installation instructions, which begin at supplemental excerpts of record 171, those come directly from the Navy supervisor of shipbuilding. So the government, in that instance, was promulgating them. Even if all we were dealing with is approval, that would be enough under Boyle. Boyle expressly uses the language about approving reasonably precise specifications, and that was actually an argument in the case, as we explain in our reply brief, that the court adopted the standard urged by the solicitor general. But there's even more than that here. I think the argument that counsel is making is that you're starting out in a broad performance specs. This is what you need to do. You know, we need to insulate the product, et cetera. And then it's Westinghouse that's choosing, and then ultimately the government says, well, okay, your choice is fine with us, but you don't have the chain of you must have asbestos that meets disqualifications and these specifications that go into your military equipment. So first we could have a factual dispute in the district court about whether that's actually what happened. Second, even if you assume that that is what happened, as a matter of law under Boyle, government approval is enough. The government doesn't have to have come up with the specifications on its own. It's enough if the government approved the reasonably precise specifications. That's the language of Boyle. And again, even if you think there's some question about that, we're in colorability territory here. And so what we've- Let me just probe one more thing on approval, because under that, I mean, ultimately they do approve either by acquiescence or saying, okay, proceed with the project. So it would, in some ways, if you would interpret approval too broadly, you would always be the high five to the military contract defense, wouldn't you? So you might have a case where you had to draw a line between approval and acceptance. Maybe there's some difference there. In this case, though, we're dealing with active approval and the Navy itself promulgating language in the form of the installation instructions that use mandatory language with respect to asbestos. I thought the case law after Boyle did talk about like an interactive process more than just approval. That is one way to establish the government contractor defense, but it's not the only way. Thank you. Thank you. Thank you both for the argument and also for the well-briefed case here. The case just argued is submitted.
judges: McKeown, Friedland, Gaitan